IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

PAMELA JEAN SMITH                                              PLAINTIFF

V.                          Case No. 3:24-CV-00168-BBM

FRANK BISIGNANO,[1]  Commissioner,
Social Security Administration                                 DEFENDANT

## ORDER

Plaintiff Pamela Jean Smith ("Smith") applied for Title II disability benefits on December 21, 2020, alleging she became disabled within the meaning of the Social Security Act on October 13, 2018. (Tr. at 10). Her claim was denied initially and upon reconsideration. *Id.* Following a hearing, the Administrative Law Judge ("ALJ") denied Smith's application on May 8, 2024. (Tr. at 21). The Appeals Council then denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Smith has requested judicial review. For the reasons stated herein, the decision of the Commissioner is affirmed.

## I.    THE COMMISSIONER'S DECISION

At step one of the five-step sequential process,[2]  the ALJ found that Smith had not

---

[1]  On May 7, 2025, Frank Bisignano was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Bisignano is automatically substituted as the Defendant.

[2]  The ALJ must determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

engaged in substantial gainful activity from October 13, 2018, through September 30, 2022, her date last insured. (Tr. at 13). The ALJ listed cervical and lumbar degenerative changes, left knee degenerative changes, chronic obstructive pulmonary disease ("COPD"), and obesity as severe impairments. *Id*. After finding at step three that none of Smith's impairments—individually or combined—met or equaled a listed impairment, the ALJ determined that Smith had the residual functional capacity ("RFC") to perform work at the light exertional level, except that she could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; could occasionally be exposed to atmospheric conditions, such as fumes, noxious odors, dusts, mists, gases, and poor ventilation; and could frequently use her upper extremities to reach, handle, finger, and feel. (Tr. at 14).

The ALJ determined that Smith was unable to perform any past relevant work but could perform other jobs existing in significant numbers in the national economy. (Tr. at 20–21). Consequently, the ALJ concluded that Smith was not disabled. (Tr. at 21).

## II.   DISCUSSION

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005)

(citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision. . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950-51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" <u>Reed</u>, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

## B.    Smith's Arguments on Appeal

Smith asserts two grounds for reversal: (1) that the ALJ erred in evaluating the persuasiveness of Dr. Kenneth Holder's opinion regarding Smith's functional limitations and that further clarification from Dr. Holder was necessary, (Doc. 8 at 19–22); and (2) that the RFC was not supported by substantial evidence, *id.* at 22–25. After reviewing the medical record evidence, the Court will address each of Smith's arguments, in turn.

### 1.    Smith's Medical History

The record reveals that, in January 2020, Smith first reported difficulty breathing to her primary care physician ("PCP"). (Tr. at 347). At the time, Smith was a daily cigarette

3

smoker. *Id*. Her physical examination was normal other than bilateral diminished breath sounds. She was prescribed a Symbicort inhaler, a ProAir inhaler, Losartan Potassium-HCTZ 12.5 mg, Metoprolol Tartrate 50 mg for hypertension, and Omeprazole 40 mg for GERD. During follow-up appointments in June, August, and November 2020, Smith reported pain in her left knee. (Tr. at 340–44). She described the knee as popping out of place daily. (Tr. at 340). She had an appointment scheduled in December with a specialist. *Id*.

In June 2021, Smith reported that her inhalers were not working and that she was having to use them to take a shower and go shopping. (Tr. at 334). She stated that the specialist would not work on her left knee until she lost weight, and she complained that, in addition to her knee, she also had pain in her low back. *Id*. She reported that she could not lose weight because she could not tolerate exercise due to her pain and her COPD. *Id*. She stated that she had stopped smoking three to four months earlier. *Id*. An examination showed decreased lung breaths and scattered wheezes, but symmetric expansion and no dyspnea. (Tr. at 335). She exhibited an altered gait due to pain. *Id*. Her maintenance medications were refilled. *Id*.

In November 2021, Smith was seen as a new patient at Paragould Doctors Clinic. (Tr. at 394). She complained of hypertension, heartburn, COPD, and skin changes. *Id*. Her examination was normal, and her medications were refilled. *Id*. A December 2021 follow-up examination was normal, with no back tenderness, and a normal respiratory examination. (Tr. at 397).

In June 2022, x-rays showed no degenerative changes in Smith's left knee and only

mild degenerative disc disease in her lumbar spine, with some disc space narrowing, marginal endplate osteophytes, and facet osteoarthritis. (Tr. at 372, 376). A chest x-ray at the same time showed no evidence of acute cardiopulmonary process and clear lungs. (Tr. at 374).

Dr. Kenneth Holder performed a consultative examination of Smith in July 2022. (Tr. at 380–84). He observed a slight decreased range of motion in Smith's (1) cervical spine with flexion and extension and (2) in her lumbar spine with flexion. (Tr. at 382). She had tenderness in both knees but full range of motion. *Id*. Her straight leg raise was negative, and she had 4/5 muscle strength in both upper extremities and 3/5 in both lower extremities. (Tr. at 383). Smith could stand and walk without an assistive device, and she could walk on her heels and toes. *Id.* Dr. Holder noted that she had a "slow, wide gait" with normal posture, and she could not tandem walk or squat. *Id*. Dr. Holder concluded that Smith had (1) moderate to severe limitations to lifting, carrying, walking, standing, bending, climbing, and kneeling; (2) moderate limitations with exertional activity, including poor endurance and decreased stamina; and (3) minimal physical limitations. (Tr. at 384).

In August 2022, Smith sought emergency-room treatment after she fell in her bathroom and possibly struck her head. (Tr. at 2029). She tested positive for amphetamine, had old bruising on her arms and legs, exhibited "erratic" behavior, and admitted she had been smoking cigarettes and using methamphetamine. (Tr. at 2029, 2032, 2035). She ambulated without assistance, had normal range of motion in all joints, and normal respiration. (Tr. at 2032). A chest CT showed emphysema but otherwise clear lungs. (Tr.

at 2041). Smith sought medical care for shingles in August and September 2022, and the records show otherwise normal examinations. (Tr. at 545–46, 551).

### 2.    ALJ's Assessment of Dr. Holder's Medical Opinion

Smith maintains that the ALJ erred in finding the opinion of Dr. Kenneth Holder only partially persuasive. Specifically, Smith argues that, rather than noting inconsistencies between Dr. Holder's opinion and the medical evidence, the ALJ assessed Dr. Holder's opinion *partial weight* based solely on the fact that the terms Dr. Holder used to assess limitations—"moderate" and "severe"—were vague, undefined, and did not indicate how long Smith could stand or walk in a normal workday. Smith submits that the ALJ should have requested clarification from Dr. Holder. Alternatively, Smith argues that, even without clarification, moderate to severe limitations would preclude light work, which requires standing or walking for six hours out of an eight-hour workday.

The Administration promulgated new regulations—effective March 27, 2017— governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes: (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An opinion is "more persuasive if it is supported by explanation

6

and relevant objective medical evidence, and is consistent with other evidence in record," *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017), & Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030). An ALJ is not bound to rely on a particular medical opinion and can decline to incorporate any portion of an opinion that the ALJ deems inconsistent. *See McKinney v. O'Malley*, No. 23-3220, 2024 WL 1327965, at *1 (8th Cir. Mar. 28, 2024) (holding that ALJ was not required to adopt the exact limitations set forth in the opinions she found persuasive, and the RFC determination was supported).

In this case, the ALJ conducted an exhaustive review of the medical evidence of record and articulated good reasons for finding Dr. Holder's opinion partially persuasive. Although the ALJ did note that Dr. Holder used non-specific language, the ALJ ultimately concluded that the medical record was more consistent with a finding that Smith could perform light work with some postural and environmental limitations. Particularly, the ALJ found that, "[i]n terms of the claimant's alleged disabling neck, back, and knee pain, the medical evidence of record is simply not supportive of the level of limitations that would be disabling." (Tr. at 17). The ALJ noted a history of conservative treatment, with no indication of hospitalization, aggressive regimens, or surgery "that would be expected if

she experienced severe, persistent, and unremitting pain." *Id*. Smith did not require steroid injections, wear a brace, use an assistive device, or attend physical therapy. *Id*. The ALJ noted that, at times, Smith did exhibit pain with range of motion, some tenderness, and an altered gait, but she also had several normal examinations where she walked without assistance and with normal posture, and objective medical testing revealed only mild findings. (Tr. at 17–18).

As for Smith's respiratory condition, the ALJ found the medical record demonstrated only "intermittent exacerbation of respiratory symptoms." (Tr. at 18). Although many examinations showed normal breathing, the ALJ did note some diminished breath sounds and wheezing. *Id*. A chest x-ray in May 2022 showed clear lungs, and a CT in August 2022 showed emphysema. (Tr. at 17–18). Notably, Smith continued to smoke throughout the relevant period, and the ALJ observed that, if her COPD symptoms were as intense, persistent, and limiting as she claimed, she would have stopped smoking. (Tr. at 18). Nevertheless, the ALJ did assign specific environmental limitations to account for Smith's COPD, including only occasional exposure to fumes, noxious odors, dusts, mists, gases, and poor ventilation. (Tr. at 14).

The ALJ also considered Smith's self-reported functioning, finding that she could dress, bathe, eat, shave, and toilet independently. (Tr. at 19). She prepared meals and did household chores, including laundry. *Id*. The ALJ considered two prior administrative findings—that Smith could perform light work (with only one limitation for pulmonary irritants)—partially persuasive and ultimately concluded Smith could perform light work with additional limitations. (Tr. at 19–20).

Even if this Court determined that Dr. Holder's opinion would support additional limitations, remand would not be appropriate. The Eighth Circuit elucidated this point in *Kraus v. Saul*:

> This Court will disturb the ALJ's decision only if it falls outside the available zone of choice. An ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact.

988 F.3d 1019, 1024 (8th Cir. 2021) (cleaned up). Here, as outlined above, the ALJ properly evaluated the persuasiveness of Dr. Holder's opinion, and the ALJ's conclusion that Dr. Holder's opinion was somewhat inconsistent with evidence in the record falls within the available zone of choice.

Furthermore, the ALJ was not required to ask Dr. Holder to clarify his opinion or to further develop the record, because the record contained ample information for the ALJ to make an informed decision about Smith's limitations. "An ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019) (cleaned up). In this case, there was sufficient evidence in the record for the ALJ to make the RFC decision, including years of examination records, results from objective medical testing, and two prior administrative findings. Further record development was not necessary.

As to Smith's alternative argument—that this court has held previously that the moderate to severe limitations outlined by Dr. Holder automatically preclude light work— the cases she cites are distinguishable. In *Hornbaker v. Berryhill*, No. 1:18-CV-00059 PSH,

2019 WL 3756386, at *3–4 (E.D. Ark. Aug. 8, 2019), the Court remanded because it could not reconcile the ALJ affording "great weight" to an examining physician's opinion but not incorporating the limitations suggested by that examining physician into the RFC. The Court did not apply a brightline rule that moderate to severe limitations prohibit a limited range of light work; rather, it held that the ALJ did not explain the contradictory finding. *Id.* Here, the ALJ found Dr. Holder's opinion persuasive in part and provided sufficient explanation for disagreement. (Tr. at 17–18).

In *Johnson v. Berryhill*, No. 3:16-CV-00311-BD, 2018 WL 566216, at *1–2 (E.D. Ark. Jan. 26, 2018), the Court held that the ALJ's finding that the claimant could perform frequent handling and fingering was not supported by substantial evidence in the record. Again, no explicit rule was articulated; the ALJ's finding lacked validation in the record. The final case cited by Smith, *Ashley v. Astrue*, No. CIV. 11-5231, 2013 WL 322231, at *2–3 (W.D. Ark. Jan. 28, 2013), which involved additional evidence submitted to the Appeals Council warranting remand, is similarly unavailing because the procedural posture is different.

In sum, the record in this case was sufficient for the ALJ to make an informed decision regarding Smith's application for disability benefits without further record development or opinion clarification; the ALJ properly evaluated the persuasiveness of Dr. Holder's opinion; and the ALJ provided good reasons for finding Smith could perform light work with certain postural and environmental limitations.

### 3.     RFC

Smith next argues that the ALJ's RFC determination is not supported by substantial evidence. Although she maintains that the RFC is incompatible with Dr. Holder's opinion, as explained previously, the ALJ did not err in finding Dr. Holder's opinion partially persuasive. Smith also asserts that the ALJ underestimated the impact of Smith's obesity, carpal tunnel, and arthritis as limiting factors when determining her RFC.

A claimant's RFC is the most the claimant can still do despite physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). When determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, considering all impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) (citing *Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984)). An ALJ is not required to include limitations that are not supported by the evidence. *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003).

The ALJ made explicit findings regarding Smith's obesity. The ALJ included obesity as a severe impairment. (Tr. at 13). Later, when determining Smith's RFC, the ALJ acknowledged her obesity but found that it did not impose additional limitations on Smith's daily functional ability. (Tr. at 18). Specifically, the ALJ pointed to the lack of laboratory findings or medical testing to establish the presence of significant arthralgias, ischemia, elevated lipids, shortness of breath, or consistent high blood pressure that would be associated with obesity-related conditions such as hypertension, obstructive sleep apnea, hyperlipidemia, osteoarthritis, or diabetes mellitus with peripheral neuropathy. The ALJ

explained that limiting Smith to light work with postural and manipulative limitations accounted for her impairments, including obesity. (Tr. at 19).

As for carpal tunnel and arthritis, Smith contends that Dr. Holder noted her grip was ninety percent on the right and eighty-five percent on the left, and Smith testified that she had to use both hands when lifting. She submits this is sufficient to show that she would have difficulty with reaching, handling, fingering, and feeling frequently, as outlined in the RFC. The ALJ acknowledged Smith's reduced grip strength but also considered that Smith lacked a carpal tunnel syndrome diagnosis. The ALJ further noted that Smith was able to hold a pen, write, touch fingertips to palms, oppose thumb to fingers, and pick up a coin. (Tr. at 13, 16).

Smith simply disagrees with the ALJ's RFC finding. However, this Court will not reweigh the evidence.[3] Contrary to Smith's assertions, the ALJ carefully weighed the evidence in the record and provided an RFC supported by substantial evidence.[4]

---

[3] As the Eighth Circuit stated in *Johnson v. Colvin*:

In evaluating the denial of SSI, we do not reweigh the evidence presented to the ALJ, and we defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.

788 F.3d 870, 872 (8th Cir. 2015) (cleaned up).

[4] *See, e.g.* (Tr. at 17) ("The claimant's diagnosed neck, back and knee pain supports a limitation to light exertional work with further limitations including no climbing of ladders, ropes, or scaffolds and only occasionally climbing of ramps and stairs and occasional balance, stoop, kneel, crouch, and crawl, as well as frequent use of the upper extremities to reach, handle, finger, and feel. These limitations pertain to and are warranted by diagnosed neck, back, and knee dysfunction. The further restriction to only occasional exposure to atmospheric conditions, such as fumes, noxious odors, dusts, mists, gases, and poor ventilation is supported by diagnosed COPD.").

## III.    CONCLUSION

Substantial evidence on the record as a whole supports the Commissioner's decision. The finding that Smith was not disabled within the meaning of the Act is hereby AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 24th day of June 2025.

_____
UNITED STATES MAGISTRATE JUDGE